## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES A. PASCAL, STEPHANIE MCFADDEN, and JAMES WRAY, | : | CIVIL ACTION |
| | : | |
| | : | Case No.: 2:22-cv-1726 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ARMSTRONG COUNTY BOARD OF COMMISSIONERS, DONALD K. MYERS, JASON RENSHAW, and PAT FABIAN, in their official capacity as the ARMSTRONG COUNTY BOARD OF COMMISSIONERS, | : | |
| | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

### COMPLAINT IN CIVIL ACTION

Plaintiffs, Charles A. Pascal, Stephanie McFadden, and James Wray, by and through their undersigned counsel, file the within Complaint in Civil Action, and further state in support thereof as follows:

### I.     JURISDICTION AND VENUE

1.     Plaintiffs invoke this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 to hear Count I of Plaintiffs' Complaint and to adjudicate their claims related to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

2.     Plaintiffs also invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear their state law claims, at Counts II and V respectively, related to Pennsylvania's Sunshine Act, 65 Pa.C.S. § 701, *et seq.*, Wrongful Discharge, and Breach of the Terms and Conditions of the Employment Agreements.

3.      Venue is appropriate in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because all facts occurred within Armstrong County, Pennsylvania.

II.     **PARTIES**

4.      Plaintiff, Charles A. Pascal, (hereinafter referred to as "Plaintiff Pascal"), was most recently the Armstrong County Chief Public Defender from January 1, 2022 until he was wrongfully discharged on November 3, 2022.[1]

5.      Plaintiff, Stephanie McFadden, (hereinafter referred to as "Plaintiff McFadden"), was the Armstrong County Assistant Public Defender from April 27, 2022 until she was wrongfully discharged on November 3, 2022.[2]

6.      Plaintiff, James Wray, (hereinafter referred to as "Plaintiff Wray"), was the Armstrong County Assistant Public Defender from 1998 until he was wrongfully discharged on November 3, 2022.[3]

7.      Plaintiff Pascal, Plaintiff McFadden, and Plaintiff Wray will be referred to collectively herein as "Plaintiffs."

8.      Defendant, Armstrong County Board of Commissioners (hereinafter the "County Commissioners"), is a government agency organized and existing under the law of the Commonwealth of Pennsylvania.

9.      Defendant, Donald K. Meyers, is a member of the Armstrong County Board of Commissioners and is being sued in his official capacity.

---

[1] Prior to this Agreement, Plaintiff Pascal had been employed as an assistant public defender with Armstrong County from approximately 2005-2022.

[2] Plaintiff McFadden had previously been employed as a public defender in Armstrong County from approximately 2000-2005.

[3] Plaintiff Wray had been employed as a public defender in Armstrong County from approximately 1998-2022.

10.     Defendant, Jason Renshaw, is a member of the Armstrong County Board of Commissioners and is being sued in his official capacity.

11.     Defendant, Pat Fabian, is a member of the Armstrong County Board of Commissioners and is sued in his official capacity.

12.     Defendants, Armstrong County Board of Commissioners, Donald K. Meyers, Jason Renshaw, and Pat Fabian will be referred to collectively herein as "Defendants."

III.     **FACTUAL RELEVANT TO ALL COUNTS**

A.     **Plaintiffs' Employment Background.**

13.     Section 9960.3 of the "Public Defender Act," 16 P.S. § 9960.1, *et seq.* (the "Public Defender Act"), entitled "Public defender; establishment," states, "[i]n each county except the County of Philadelphia, there shall be a public defender, appointed herein as provided."

14.     At all times relevant hereto, Plaintiff Pascal was an employee and appointed pursuant to 16 P.S. § 9960.4 of the Public Defender Act, entitled "Public defender; appointment," that states, "[t]he public defender shall be appointed by the Board of Commissioners."

15.     On or about January 1, 2022, after a public meeting, the County Commissioners approved Plaintiff Pascal as the Public Defender of Armstrong County pursuant to a document titled, "County of Armstrong Agreement for Legal Services" (hereinafter "the Chief Public Defender Agreement"). A true and correct copy of the Chief Public Defender Agreement is attached hereto and incorporated as if fully set forth at length herein as Exhibit "1."

16.     At all times relevant hereto, Defendants provided Plaintiff Pascal with an office, computers, government issued identifications and credentials, and legal research software.

17.     However, Defendants failed to provide Plaintiff Pascal with insurance benefits or pension benefits the same as were provided to other public employees in the employ of the Defendants.

18.     Section 9960.5(a) of the Public Defender Act, entitled "Personnel of office; compensation; qualification" states, "[t]he public defender, with the approval of the appointive body, may provide for as many full or part time assistant public defenders, clerks, investigators, stenographers and other employees[sic] as he may deem necessary to enable him to carry out the duties of his office [, and] [t]he salary board shall fix the salary of the public defender and of the personnel authorized by this section."

19.     On or about April 27, 2022, Plaintiff McFadden was approved pursuant to Section 9960.5 of the Public Defender Act and documents titled, "Assistant Public Defender Agreements" (hereinafter "the Assistant Public Defender Agreements"). A true and correct copy of the Assistant Public Defendant Agreements are attached hereto and incorporated as if fully set forth at length herein as Exhibit "2."

20.     At all times relevant hereto, Defendants provided Plaintiff McFadden with an office, computers, government issued identifications and credentials, and legal research software.

21.     However, Defendants failed to provide Plaintiff McFadden with insurance benefits or pension benefits the same as were provided to other public employees in the employ of the Defendants.

22.     On or about January 1, 2022, Plaintiff Wray was approved pursuant to Section 9960.5 of the Public Defender Act and documents titled, "Assistant Public Defender Agreements" (hereinafter "the Assistant Public Defender Agreements"). *See* Ex. 2.

23. At all times relevant hereto, Defendants provided Plaintiff Wray with an office, computers, government issued identifications and credentials, and legal research software.

24. However, Defendants failed to provide Plaintiff Wray with insurance benefits or pension benefits the same as were provided to other public employees in the employ of the Defendants.

25. The Chief Public Defender Agreement states in pertinent part that it "may be terminable *at the request of the County Commissioners*…" *See* Ex. 1 (emphasis added).

26. The Assistant Public Defender Agreements state in pertinent part that they "may be terminable at the request of the [Chief] Public Defender *with the approval of the County Commissioners*…" *See* Ex. 2 (emphasis added).

27. On or about November 3, 2022, in secret, and without notice, Defendants, via a letter from Chief Administrator, Aaron S. Poole, wrongfully discharged Plaintiffs. A true and correct copy of the letters of termination are attached hereto and incorporated as if fully set forth at length herein as Exhibit "3." Mr. Poole lacked statutory or other authority to terminate Plaintiffs.

28. In doing so, Defendants plainly violated the Fourteenth Amendment to the United States Constitution.

29. In doing so, Defendants also breached the terms and conditions of the Chief Public Defender Agreement and the Assistant Public Defender Agreements.

**B.    Defendants Violated Plaintiffs' Fourteenth Amendment Rights Pursuant to *Loudermill*.**

30. Plaintiffs, as public employees, have an inherent property interest in their employment positions.[4]

---

[4] Plaintiffs are cognizant of the Pennsylvania Commonwealth Court opinion in *Sasinoski v. Cannon*, 696 A.2d 267, 268 (Pa. Cmwlth. 1997). As in *Sasinoski*, Plaintiffs were wrongfully terminated here by the Chief County Administrator. However, *Sasinoski* is inapplicable with respect to the *Loudermill* claim.

31.     At no time during the events complained of herein, did Plaintiffs receive any oral or written notice of the potential deprivation of their property interest in their employment positions.

32.     As a result, Plaintiffs were not afforded any pre-deprivation process as due process requires pursuant to *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985).

33.     Defendants plainly violated *Loudermill*.

**C.     Defendants Breached the Terms and Conditions of the Employment Agreements.**

34.     At all relevant times herein, Plaintiffs were public employees pursuant to the Public Defender Act and their Agreements.

35.     At all times relevant herein, Plaintiff Pascal was the Chief Public Defender.

36.     At no time during the events complained of herein, did the Defendants request that the Chief Public Defender Agreement be terminated.

37.     At all times relevant herein, Plaintiffs McFadden and Wray were Assistant Public Defenders.

38.     At no time during the events complained of herein, did Plaintiff Pascal request that Plaintiff McFadden or Plaintiff Wray be terminated.

39.     At no time during the events complained of herein, did the Defendants approve and request of the Chief Public Defender to terminate the Assistant Public Defender Agreements.

**D.     Defendants Violated the Sunshine Act.**

40.     At no time during the events complained of herein, did Defendants act in accordance with, or in compliance with, 65 Pa.C.S. § 701, the "Sunshine Act."

41.     Rather, on or about November 3, 2022, in secret, and without notice, Defendants, via a letter from Chief Administrator, Aaron S. Poole, wrongfully discharged Plaintiffs. *See* Ex. 3.

42.     The letters of termination were prepared in secret, without notice, and were not approved at a public meeting.

43.     Specifically, no mention of this action was made on November 2, 2022, salary board meeting, or the November 3, 2022, County Commissioners meeting.

44.     The aforementioned events leading to the wrongful discharge of Plaintiffs' employment required official action pursuant to Section 703 of the Sunshine Act.5

45.     Defendants violated the Sunshine Act.

## COUNT I – DUE PROCESS VIOLATION OF THE FOURTEENTH AMENDMENT
### *42 U.S.C. § 1983*
### *Plaintiffs v. Defendants*

46.     The foregoing paragraphs are incorporated by reference as if fully set forth at length herein.

47.     The Due Process Clause of the Fourteenth Amendment states that, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

48.     Plaintiffs, as public employees, have an inherent property interest in their employment as public defenders.

49.     The Supreme Court of the Unites States held that "the root requirement" of the Due Process Clause is "that…individuals [are] given an opportunity for a hearing before [they] [are] deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original); *see also Bell v. Burson*, 402 U.S. 535, 542 (1971); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

---

5 Defendants have since hired a new chief public defender without legally terminating Plaintiff Pascal.

50.     The Supreme Court of the United States further has held that a Due Process violation requires a "pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985).

51.     Likewise, "under established Pennsylvania law, [plaintiffs are] entitled to pre-deprivation process at the investigation and possible suspension without pay stage of the [any] actions against [them]" *Baker v. Moon Area Sch. Dist.*, No. 2:15-cv-1674, 2021 U.S. Dist. LEXIS 29187, at *15 (W.D. Pa. Feb. 16, 2021).

52.     Here, Defendants failed to afford Plaintiffs with any pre-deprivation procedural due process pursuant to *Loudermill*.

53.     Accordingly, Defendants have therefore violated Plaintiffs' procedural due process rights under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants by voiding the actions taken by Defendants *ab initio*, making Plaintiffs whole, granting attorney's fees, cost of litigation, or an appropriate portion of the fees and costs, and any other relief the Court deems appropriate.

### COUNT II – VIOLATION OF PENNSYLVANIA'S SUNSHINE ACT
**65 Pa.C.S. § 701, et seq.**
*Plaintiffs v. Defendants*

54.     The foregoing paragraphs are incorporated by reference as if fully set forth at length herein.

55.     Section 704 of the Sunshine Act states that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions)

or 712 (relating to General Assembly meetings covered)." *See* 65 Pa.C.S. § 704; *Alekseev v. City Council of the City of Phila.*, 8 A.3d 311 (Pa. 2010).

56.     Here, no exceptions under Sections 707, 708, or 712 apply to Plaintiffs' wrongful discharge.

57.     Accordingly, Section 704 applies requiring a public open meeting and deliberations before the official action of terminating Plaintiffs would be proper under the Sunshine Act.

58.     Instead, on or about November 3, 2022, the Commissioners, via a letter from Chief Administrator, Aaron S. Poole, terminated all three Agreement between the parties. *See* Ex. 3.

59.     The letters of termination were prepared in secret, without notice, and were not approved at a public meeting.

60.     This constitutes a violation of Section 704 of the Sunshine Act.

61.     Additionally, even if any such meeting did occur, Defendants violated Section 704 of the Sunshine Act by failing to properly keep the minutes of the meeting.

62.     Further, Defendants violated Sections 703 and 709 of the Sunshine Act by failing to provide adequate public notice.

63.     Therefore, the meeting, or other forum in which the decision to terminate Plaintiffs was unauthorized and violative of the Sunshine Act.

64.     As such, and pursuant to 65 Pa.C.S. § 713, the official action taken in this matter, the terminations of Plaintiffs' employment agreements, are null and void.

65.     Additionally, Defendants willful and wanton disregard of the Sunshine Act constitutes a crime under Section 714.

66.     Because the decision to terminate Plaintiffs are null and void, Plaintiffs are entitled to: reinstatement, back pay, reimbursement for lost benefits, and any other benefit they would have received under the employment agreements.

67.     Further, pursuant to Section 714, Defendants must also pay attorney's fees, cost of litigation, or an appropriate portion of the fees and costs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants by voiding the actions taken by Defendants *ab initio*, making Plaintiffs whole, granting attorney's fees, cost of litigation, or an appropriate portion of the fees and costs, and any other relief the Court deems appropriate.

## COUNT III – WRONGFUL DISCHARGE
### *Plaintiffs v. Defendants*

68.     The foregoing paragraphs are incorporated by reference as if fully set forth at length herein.

69.     Although Pennsylvania is an at-will employment state, there are exceptions to the doctrine that an at-will employee may be terminated for any reason or no reason where: 1) a clear mandate of public policy is violated; and 2) there is no plausible and legitimate reason for terminating the at-will relationship. *See e.g. Geary v. U.S. Steel Corp.*, 456 Pa. 171, 183, 319 A.2d 174, 180 (1974).

70.     Additionally, an employer 1) cannot require an employee to commit a crime, 2) cannot prevent an employee from complying with a statutorily imposed duty, and 3) cannot discharge an employee when specifically prohibited from doing so by statute. *See e.g. Stewart v. FedEx Exp.*, 2015 Pa. Super. 86, 114 A.3d 424, 428 (2015).

71.     Section 9960.3 of the "Public Defender Act," 16 P.S. § 9960.3, states, "[i]n each county except the County of Philadelphia, there shall be a public defender, appointed herein as provided." (emphasis added).

72.     Further, Section 9960.4, states "[t]he public defender shall be appointed by the Board of County Commissioners."

73.     Section 9960.5 states "[t]he public defender, with the approval of the appointive body, may provide for as many full or part time assistant public defenders, clerks, investigators, stenographers and other employes[sic] as he may deem necessary to enable him to carry out the duties of his office…[t]he salary board shall fix the salary of the public defender and of the personnel authorized by this section."

74.     Here, Plaintiffs were appointed pursuant to the Public Defender Act.

75.     Plaintiffs performed all their employment duties as required; however, Plaintiffs have been prevented from complying with their statutorily imposed duties as public defenders pursuant to the Public Defender Act.

76.     Plaintiffs were wrongfully discharged in violation of public policy and the Public Defender Act.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants by voiding the actions taken by Defendants *ab initio*, making Plaintiffs whole, granting attorney's fees, cost of litigation, or an appropriate portion of the fees and costs, and any other relief the Court deems appropriate.

<u>**COUNT IV – BREACH OF THE TERMS AND CONDITIONS**</u>
<u>**OF THE EMPLOYMENT AGREEMENTS**</u>
***Plaintiffs v. Defendants***

77.    The foregoing paragraphs are incorporated by reference as if fully set forth at length herein.

78.    Section 9960.3 of the Public Defender Act states, "[i]n each county except the County of Philadelphia, there shall be a public defender, appointed herein as provided."

79.    At all times relevant hereto, Plaintiff Pascal was an employee and appointed pursuant to Section 9960.4 of the Public Defender Act and pursuant to the Chief Public Defender Agreement. *See* Ex. 1.

80.    Section 9960.5(a) of the Public Defender Act states, "[t]he public defender, with the approval of the appointive body, may provide for as many full or part time assistant public defenders, clerks, investigators, stenographers and other employees[sic] as he may deem necessary to enable him to carry out the duties of his office [, and] [t]he salary board shall fix the salary of the public defender and of the personnel authorized by this section."

81.    On or about April 27, 2022, Plaintiff McFadden was approved pursuant to Section 9960.5 of the Public Defender Act her Assistant Public Defender Agreement. *See* Ex. 2.

82.    On or about January 1, 2022, Plaintiff Wray was approved pursuant to Section 9960.5 of the Public Defender Act his Assistant Public Defender Agreement. *See* Ex. 2.

83.    The Chief Public Defender Agreement states in pertinent part that it "may be terminable ***at the request of the County Commissioners***…" *See* Ex. 1 (emphasis added).

84.    The Assistant Public Defender Agreements state in pertinent part that they "may be terminable at the request of the [Chief] Public Defender ***with the approval of the County Commissioners***…" *See* Ex. 2 (emphasis added).

85.     Plaintiffs' employment was set by the terms and conditions of the Chief Public Defender Agreement and the Assistant Public Defender Agreements.

86.     At all times relevant hereto, Defendants provided Plaintiffs with an office, computers, government issued identifications and credentials, and legal research software.

87.     However, Defendants failed to provide Plaintiffs with insurance benefits or pension benefits the same as were provided to other public employees in the employ of the Defendants.

88.     On or about November 3, 2022, in secret, and without notice, Defendants, via a letter from Chief Administrator, Aaron S. Poole, wrongfully discharged Plaintiffs. *See* Ex. 3.

89.     Mr. Poole lacked statutory or other authority to terminate Plaintiffs.

90.     In doing so, Defendants also breached the terms and conditions of the Chief Public Defender Agreement and the Assistant Public Defender Agreements.

91.     Under the terms of the Agreements, Plaintiffs could only be terminated by at the request or approval of the County Commissioners.

92.     However, Plaintiffs were terminated via letter from the County Administrator.

93.     The same constitutes a material breach of the Agreements.

94.     As a direct result of Defendants' breach of the Agreements

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants by voiding the actions taken by Defendants *ab initio*, making Plaintiffs whole, granting attorney's fees, cost of litigation, or an appropriate portion of the fees and costs, and any other relief the Court deems appropriate.

## COUNT V – REQUEST FOR INJUNCTIVE RELIEF
### *Plaintiffs v. Defendants*

95.   The foregoing paragraphs are incorporated by reference as if fully set forth at length herein.

96.   Plaintiffs have no adequate remedy at law to prevent the Defendants from violating the Sunshine Act and Fourteenth Amendment.

97.   Plaintiffs further assert their right to enjoin the violations of law as previously set forth herein and will suffer irreparable harm by virtue of the continued violations of law occurring with respect to their employment.

98.   The harm inuring to Plaintiffs by virtue of the continued violations of the Sunshine Act are greater than any harm that will inure by virtue of an Order directing Defendants to comply with the Sunshine Act and Fourteenth Amendment.

99.   Plaintiffs meet the requirements necessary for this Court to issue a preliminary injunction because:

1)   it is necessary to prevent immediate and irreparable harm that cannot be compensated by damages,

2)   greater injury would result from refusing the injunction than from granting it,

3)   the injunction will properly restore the status quo as it existed prior to the issuance of Defendants' improper actions and its violation of the Sunshine Act and Fourteenth Amendment,

4)   Plaintiffs are likely to prevail on the merits,

5)   the injunction is reasonable, necessary, and narrowly tailored to abate the violations of the Sunshine Act and Fourteenth Amendment, and

6)   the injunction will not adversely affect the public interest, on the contrary, it will be in the interests of law abiding citizens of Armstrong County.

100.   The aforesaid violations constitute per se irreparable harm, and the Plaintiffs are likely to prevail on the merits in the underlying action presented herewith.

101.   In addition, the aforesaid violations of the Sunshine Act and Fourteenth Amendment have caused immediate and irreparable harm as such violations are ongoing as of the

time of the filing of the within Complaint as Defendants continue to violate the Sunshine Act and Fourteenth Amendment in Armstrong County.

WHEREFORE, Plaintiffs respectfully request that the Court set aside the aforesaid actions of Defendants and further request an Injunction that includes, but is not limited to the following:

1. an order enjoining Defendants from violating the Sunshine Act and Fourteenth Amendment;

2. an order declaring that Defendants' actions are in violation of the Sunshine Act and Fourteenth Amendment;

3. an order declaring that the Defendants' actions are in violation of the Sunshine Act and Fourteenth Amendment;

4. an order directing that Defendants fully comply with Pennsylvania law and cease such unlawful activities as are heretofore described;

5. an order declaring Defendants' actions null and void *ab initio*;

6. an order requiring Defendants to reinstate Plaintiffs;

7. an order requiring Defendants to provide Plaintiffs with back pay;

8. an order requiring Defendants to reimbursement Plaintiffs for lost benefits;

9. an order requiring Defendants to pay Plaintiffs' attorney's fees, cost of litigation, or an appropriate portion of the fees and costs; and

10. an order granting any such further relief as may be just or appropriate in the circumstances, including an award of counsel fees to the Plaintiffs.

Respectfully Submitted,

**DILLON, MCCANDLESS, KING, COULTER & GRAHAM, L.L.P.**

Dated: <u>December 2, 2022</u>

By: <u>/s/ Jordan P. Shuber</u>
Thomas W. King, III
Pa. I.D. No. 21580
tking@dmkcg.com
Jordan P. Shuber
Pa. ID. No.317823
jshuber@dmkcg.com

- 15 -

128 West Cunningham Street
Butler, Pennsylvania 16001
Telephone: (724) 283-2200

*Counsel for Plaintiffs*